```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
JORDAN ROBERTS, an infant under    : 10 Civ. 4548 (BSJ) (JCF)
the age of 14 years, by his mother :
and natural guardian, SANDRA       :         REPORT AND
PHILLIP, and SANDRA PHILLIP,       :       RECOMMENDATION
individually,                      :
                Plaintiffs,        :
                                   :
     - against -                   :
                                   :
HAPPINESS IS CAMPING INC.,         :
                                   :
                Defendant.         :
- - - - - - - - - - - - - - - - - -:
```

TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

Sandra Phillip brings this tort claim on her own behalf and on behalf of her son, Jordan Roberts, against Happiness is Camping, Inc. ("HIC-NJ"). The defendant has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the plaintiffs' claims are barred by the New Jersey Charitable Immunity Act, N.J.S.A. §§ 2A:53A-7 to -11. For the reasons set forth below, I recommend the motion be denied.

Background

The infant plaintiff, Jordan Roberts, was a participant in HIC-NJ's camp, known as Happiness Is Camping, in the summer of 2007. (Declaration of Richard Campbell in Support of Defendant's Motion for Summary Judgment on the Issue of Charitable Immunity dated April 27, 2011 ("Campbell Decl."), ¶ 5; Complaint, ¶ 4; Defendant's Statement of Undisputed Material Facts ("Def. Rule 56.1

1

Statement"), ¶ 1).   Both plaintiffs, Jordan Roberts and Sandra Phillips, are residents of New York.   (Complaint, ¶ 1).   The defendant, HIC-NJ, is a § 503(c)(3) not-for-profit corporation, organized and existing under the laws of the State of New Jersey. (Def. Rule 56.1 Statement, ¶ 12; Complaint, ¶ 2).   It provides free camping experience for children ages 6 though 15 years, residing throughout the United States and abroad, who have been diagnosed with cancer.   (Def. Rule 56.1 Statement, ¶¶ 3, 4; Campbell Decl., ¶ 3).

The plaintiffs allege that Jordan Roberts suffered injuries as a result of a fall while on the premises of the HIC-NJ's camp located in Hardwick, New Jersey.   (Def. Rule 56.1 Statement, ¶ 5; Complaint, ¶¶ 5, 6).   While Mr. Roberts was originally treated at the camp infirmary by a camp doctor (Campbell Decl., ¶ 4), the majority of treatment for the injury seems to have been conducted in the State of New York.   (Declaration of Stuart M. Rissoff, Esq. in Support of Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment on the Issue of Charitable Immunity dated May 27, 2011 ("Rissoff Decl."), ¶ 3).   HIC-NJ asserts that at all times relevant to this litigation, it owned, operated and controlled the camp, employing the directors, staff and counselors and maintaining the camp buildings and grounds. (Def. Rule 56.1 Statement, ¶ 11; Campbell Decl., ¶ 7).   At the same

2

time, HIC-NJ admits that a majority of its donations come from a New York § 503(c)(3) corporation, also known as Happiness is Camping, Inc. ("HIC-NY"). (Def. Rule 56.1 Statement, ¶ 14; Campbell Decl., ¶ 9). HIC-NY engages in fund-raising and accepts donations from the general public, and these funds are then donated by HIC-NY to HIC-NJ for use by the latter in operating the camp. (Def. Rule 56.1 Statement, ¶ 15; Campbell Decl., ¶ 9). The defendant states that HIC-NY has no ownership interest in, or management responsibilities for, the camp. (Def. Rule 56.1 Statement, ¶ 16; Campbell Decl., ¶ 10). Rather, HIC-NY and HIC-NJ are independent entities with separate corporate tax identification numbers. (Def. Rule 56.1 Statement, ¶ 18; Campbell Decl., ¶ 11).

While the plaintiffs do not contest the separate legal identities of HIC-NJ and HIC-NY, they argue that there are extensive contacts between HIC-NJ and the State of New York. In official documents and on its letterhead, HIC-NJ lists its main address as 2169 Grand Concourse, Bronx, New York. (Business Entity Status Report ("Entity Report"), attached as part of Exh. 2 to Rissoff Decl.; Happiness is Camping for Children with Cancer Confirmation Letter ("Confirmation Letter"), attached as part of Exh. 2 to Rissoff Decl.; Plaintiffs' Response to Defendant's Statement of Undisputed Facts dated May 27, 2011 ("Pl. 56.1 Resp."), ¶¶ 17, 19, 20). The Chief Executive Officer of HIC-NJ

3

maintains his office in New York. (Entity Report). Finally, HIC-NJ's website identifies the New York address as its office location and lists a New York telephone number. (HIC-NJ Web-Page attached as Exh. 3 to Rissoff Decl.).

<u>Discussion</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a). The moving party bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 323 (1986). However, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." <u>Anderson v. Liberty Lobby Inc.</u>, 477 U.S. 242, 257 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255 (citation omitted).

In a diversity action, a federal court must apply the choice of law rules of the forum state, which in this case is New York. <u>GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.</u>, 449 F.3d 377, 382 (2d Cir. 2006) (citing <u>Klaxon Co. v. Stentor Electric Manufacturing Co.</u>, 313 U.S. 487, 496 (1941)); <u>Chrysler Capital Realty, Inc. v. Grella</u>, 942 F.2d 160, 162 (2d Cir. 1991). Thus, "[o]ur task is to determine what law New York courts would apply in

this situation." O'Rourke v. Eastern Air Lines, Inc., 730 F.2d 842, 847 (2d Cir. 1984), abrogated on other grounds by Salve Regina College v. Russell, 499 U.S. 225 (1991).

In this case, a conflict of law arises because New Jersey law incorporates the doctrine of charitable immunity, which provides that non-profit corporations and associations organized exclusively for religious, charitable, or educational purposes are immune from liability for injuries caused to a beneficiary of the charitable institution as a result of negligence. N.J. Stat. Ann. § 2A:53A-7. Although New York once recognized charitable immunity, it abolished the doctrine in 1957 in Bing v. Thunig, 2 N.Y.2d 656, 667, 163 N.Y.S.2d 3, 9 (1957) (explaining that the rule was "out of tune with the life about us, at variance with modern-day needs and with concepts of justice and fair dealing," and that it "should be discarded").

Because charitable immunity is considered a "loss-allocating" rule, a rule that 'prohibit[s], assign[s], or limit[s] liability after the tort occurs,' Padula v. Lilarn Properties Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 312 (1994), New York courts would normally apply the three rules set forth in Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972), to resolve the conflict. Gilbert v. Seton Hall University, 332 F.3d 105, 109 (2d Cir. 2003). The second rule is most closely analogous to the case

5

before us, and prescribes:

> When the [tortfeasor's] conduct occurred in the state of his
> domicile and the state does not cast him in liability for that
> conduct, he should not be held liable by reason of the fact
> that liability would be imposed upon him under the tort law of
> the state of the victim's domicile.

Neumeier, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70 (quoting Tooker v.

Lopez, 24 N.Y.2d 569, 585; 301 N.Y.S.2d 519, 532 (1969)).  By the

terms of this rule, it would appear that New Jersey law would

apply.

Nevertheless, the second rule of Neumeier is not controlling

because New York courts have applied a public policy exception in

cases involving the charitable immunity statute, recognizing that

"New York has a deep interest in protecting its own residents,

injured in a foreign state, against unfair or anachronistic

statutes of that state."  Neumeier, 31 N.Y.2d at 125, 335 N.Y.S.2d

at 68.  A party invoking the public policy exception "has the

burden of proving that the foreign law is contrary to New York

public policy" and that "there are enough important contacts

between the parties, the occurrence and the New York forum to

implicate our public policy and thus preclude enforcement of the

foreign law."  Schultz v. Boy Scouts of America, 65 N.Y.2d 189,

202, 491 N.Y.S.2d 90, 99 (1985).  Thus, "[t]he public policy

doctrine is an exception to implementing an otherwise applicable

choice of law in which the forum refuses to apply a portion of

foreign law because it is contrary or repugnant to its State's own public policy." Id., 491 N.Y.S.2d at 99.

Other New York courts have applied the public policy exception to the Neumeier rules in cases involving the charitable immunity defense when the tort victims and the defendants had a sufficient level of contact with New York. See Rakaric v. Coatian Cultural Club Cardinal Stepinac Organization, 76 A.D.2d 619, 632-33, 430 N.Y.S.2d 829, 838 (2d Dep't 1980), appeal dismissed, 52 N.Y.2d 1072, 1981 WL 178090 (1981); Begley v. City of New York, 62 A.D.3d 739, 740, 878 N.Y.S.2d 770, 771 (2d Dep't 2009); see also Rosenthal v. Warren 374 F. Supp. 522, 524-26 (S.D.N.Y. 1974). In Rakaric, the court found that there was sufficient contact because the tort victim was a resident of New York and the defendant "function[ed] in close association with, and in furtherance of the religious and beneficent purposes of" a church and pastor domiciled in New York. 76 A.D.2d at 620, 632, 430 N.Y.S.2d at 831, 839. Similarly, in Rosenthal, the court found that the contacts between the defendant hospital and New York were significant insofar as the "defendant hospital [was] a national one in terms of its patients, its staff, its reputation and its efforts to obtain out-of-state contributions." 374 F. Supp. at 524. The defendant's national status combined with the tort victim's status as a New York resident, compelled the court to hold that the interest of New York

outweighed that of Massachusetts.  374 F.Supp. at 530.

While the New York Court of Appeals upheld the defendant's charitable immunity defense in <u>Schultz</u>, that case is distinguishable in that the parties were both New Jersey residents and, while part of the alleged tort took place in New York, the contact was found to be "isolated and infrequent."  65 N.Y.2d at 202, 491 N.Y.S.2d at 98.  Notably, the <u>Schultz</u> court acknowledged that because New York had discarded the doctrine of charitable immunity, the "enforcement of New Jersey's statute [granting charitable immunity] might well run counter to our fundamental public policy," but refused to decide whether the public policy exception applied because there were insufficient contacts with New York on the facts before it.  65 N.Y.2d at 203, 491 N.Y.S.2d at 100.  Similarly, while the Second Circuit found that the New Jersey charitable immunity defense was applicable in <u>Gilbert</u>, the tort victim in that case was domiciled in Connecticut, and the fact that the alleged tort took place in New York was insufficient by itself to warrant an application of the public policy exception.  332 F.3d at 107.

As in <u>Rakaric</u> and <u>Rosenthal</u>, the plaintiffs here are residents of New York, whom the state has a strong interest in protecting, and the defendant has a significant level of contact with New York. The defendant accepts participants from New York and throughout the

United States, receives substantial donations from HIC-NY, and repeatedly lists its main office as being in New York. By comparison, the <u>Rosenthal</u> court found that the mere fact that the Massachusetts hospital had a nationwide reputation established sufficient contact with New York. Furthermore, although the defendant contends that the two corporations are distinct entities, neither <u>Rakaric</u> nor <u>Rosenthal</u> seem to require that a New York entity exhibit control over the foreign one to establish sufficient contact. Thus, the standard required by New York law to warrant a public policy exception to the loss allocation rules under <u>Neumeier</u> has been met, and the New Jersey's charitable immunity defense is therefore inapplicable.

<u>Conclusion</u>

Based on the reasoning above, I recommend that the defendant's motion for summary judgment (Docket no. 12) be denied. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, U.S.D.J., Room 1920, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude

appellate review.

Respectfully submitted,

*James C. Francis IV*

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          February 15, 2012

Copies mailed this date to:

Stuart M. Rissoff, Esq.
Law Offices Stuart M. Rissoff
300 Garden City Plaza, Suite 144
Garden City, New York 11550

Raymond S. Mastrangelo, Esq.
Mound Cotton Wollan and Greenglass
855 Franklin Avenue
Garden City, New York 11530

Rodney E. Gould, Esq.
Robert C. Mueller, Esq.
Rubin, Hay & Gould, PC
205 Newbury Street
P.O. Box 786
Framingham, MA 01701